UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DAVID H. JOHNSTON,<br><br>          Plaintiff,<br><br>vs.<br><br>ROBERT DOOLEY, WARDEN, MIKE DURFEE STATE PRISON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND DENNIS KAEMINGK, SECRETARY OF CORRECTIONS FOR THE STATE OF SOUTH DAKOTA, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES;<br><br>          Defendants. | 4:15-CV-04125-LLP<br><br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on plaintiff David H. Johnston's *pro se* complaint pursuant to 42 U.S.C. § 1983. See Docket No. 1. Mr. Johnston has been granted *in forma pauperis* status and has paid his initial partial filing fee. The pending matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, District Judge. This court has "screened" this case pursuant to 28 U.S.C. § 1915, and has determined it must be dismissed, in part, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

## FACTS

Last year in 2014, Mr. Johnston filed a § 1983 civil suit nearly identical to the present lawsuit.  See Johnston v. Dooley, 4:14-cv-04125, Docket No. 1 (D.S.D.).  In that earlier lawsuit, Mr. Johnston alleged his First Amendment right of access to the courts was being violated by defendant Robert Dooley, Warden at the Mike Durfee State Prison, and Dennis Kaemingk, Secretary of the South Dakota Department of Corrections.  Id.  He alleged defendants violated his right of access to the courts through the following acts or omissions:

     1.    Providing a law library in a room the confines of which are so small that only five prisoners at a time can be accommodated;

     2.    Providing South Dakota Codified Laws and American Jurisprudence in an incomplete and unupdated form; providing only a partial set of the United States Code that is current only up to 2005;

     3.    Providing consultation with the Contract Attorney too infrequently and limiting the number of case laws obtainable to eight per month;

     4.    Charging $0.25 per legal copy;

     5.    Providing only two computers for prisoners to use when most courts are transitioning or have already transitioned to a paperless docket;

     6.    Limiting the number of legal letters allowed per week to five and limiting postage to $10 per month; and

     7.    Denying prisoners adequate and current forms.

<u>See</u> Docket Nos. 1, 9 & 14 in CIV. 14-4125.[1]  For these alleged constitutional deprivations, Mr. Johnston sought an order requiring the state to stock the law library at Mike Durfee with the United States Code, and "USAC", current Jurisprudence, a full set of the South Dakota Codified Laws, a room big enough for 20 inmates to research in, a copier in the law library for inmate use, more computers for creating legal documents, a paralegal to operate the law library and answer legal questions, better quality forms or a means for inmates to obtain their own forms, a personal computer and printer for Mr. Johnston's personal use with precise specifications (e.g. 1 terabyte hard drive, 8G RAM, sound card with ear bud jack, network wi/fi compatible card, etc.), and the payment of $1 million in damages.  <u>Id.</u>  Mr. Johnston's 2014 case was dismissed without prejudice on this court's recommendation because he had failed to exhaust his administrative remedies before filing suit.  <u>Id.</u> at Docket Nos. 47 and 55.

Six weeks after his 2014 case was dismissed, Mr. Johnston filed the instant action.  <u>See</u> Docket No. 1.  In this action, Mr. Johnston alleges 14 separate claims, all of which allege—again--that defendants Robert Dooley and Dennis Kaemingk have violated his First Amendment right of access to the courts.  <u>Id.</u>  His litany of claims includes the following:

---

[1] In the 2014 case, Mr. Johnston filed his initial complaint in narrative form on August 11, 2014.  <u>See</u> Docket No. 1 supplemented by Docket No. 9.  Because certain information needed to screen Mr. Johnston's complaint was missing, the court ordered him to fill out the § 1983 form complaint.  <u>See</u> Docket No. 13 in that case.  Thereafter, Mr. Johnston submitted a filled out form complaint.  <u>See</u> Docket No. 14.

1. defendants have not maintained current law library materials and have only provided one set of each type of materials (i.e. South Dakota Codified Laws);

2. defendants have not provided a knowledgeable law librarian;

3. defendants have not provided adequate physical space for the law library to allow for reasonable occupancy;

4. defendants have not provided a sufficient number of computers for inmates to type legal pleadings on;

5. defendants have not provided inmates with Internet access for legal research;

6. defendants have not provided sufficient time for obtaining legal assistance;

7. defendants have implemented a policy on obtaining copies of case law that is insufficient to allow inmates to research;

8. defendants have implemented a policy on free copies that is overly restrictive;

9. defendants have implemented a legal mail policy that obstructs inmates' access to the courts where more than three defendants are named in a law suit;

10. defendants have obstructed access to the courts by limiting inmates to using a computer for one hour at a time and forbidding them from saving their work electronically;

11. defendants have obstructed access to the courts by denying inmates access to legal templates on computer software;

12. defendants have not allowed inmates sufficient time in the law library; and

13. defendants have obstructed inmates' right of access to the media by denying access to the Internet.

The relief Mr. Johnston seeks in this law suit largely mirrors the relief he requested last year, with the exception that he now seeks $15 million in damages.  Id.

Paragraph 4 of Mr. Johnston's statement of each of his claims is identical.  That paragraph states 14 times:

> Injury:  Turned down for appeal due to outdated information, turned down motion to vacate because it was improperly filed due to out dated law books, and 1983 on law library was dismissed because Plaintiff did not have a copy of the [Prison Litigation Reform Act] 42 [U.S.C.] § 1996e, 1983 dismissed because Plaintiff did not have 28 U.S.C. [§] 1915 to inform him of qualified immunity.

See Docket No. 1 at pp. 6-19, at ¶ 4 on each page.

The court issued an order requiring Mr. Johnston to elaborate on the above information by:

1. explaining what lawsuit or lawsuits he contends were interfered with or frustrated by defendants' alleged denial of access to the courts described in that claim;

2. how each lawsuit or lawsuits associated with that particular claim were interfered with or frustrated by defendants; and

5

      3.      identifying the lawsuit frustrated or interfered with by stating

           a.      the name of the plaintiff in the suit,

           b.      the name(s) of the defendant,

           c.      the case number, and

           d.      the name of the court where the case was filed.

See Docket No. 8.

Mr. Johnston filed a document in response to the court's order identifying three lawsuits he claims defendants' actions interfered with or impeded: (1) State v. Johnston, CR-10-336 (5th Judicial Circuit Aberdeen, South Dakota), criminal case and direct appeal; (2) Johnston v. State, Civ. 14-241 (5th Judicial Circuit Aberdeen, South Dakota), state habeas claim; and (3) Johnston v. Dooley, 4:14-cv-04125-LLP (D.S.D.), the 2014 case access to the courts case discussed above. The court now turns to a review of the legal merits of Mr. Johnston's claims.

## DISCUSSION

**A.    Rule 12(b)(6) and 28 U.S.C. § 1915 Screening Standards.**

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)) and 1915A(b)(1), a prisoner's complaint should be dismissed on screening if it "fails to state a claim upon which relief may be granted." This standard is the same standard as is used to determine whether a complaint satisfies the standards of Fed. R. Civ. P. 12(b)(6). Kane v. Lancaster County Dept. of Corrections, 960 F. Supp. 219 (D. Neb. 1997). "In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded,

6

. . . to less stringent standards than formal pleadings drafted by lawyers.' " Jackson v. Nixon, 747 F.3d 537, 541 (8th Cir. 2014) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper framework." Id. at 544 (quoting Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004)).

  The United States Supreme Court addressed the standard that district courts are to apply to Rule 12(b)(6) motions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

  The law predating Twombly and Iqbal held that under Rule 12(b)(6), the court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). However, Conley's "no set of facts" language was overruled in Twombly. Twombly, 550 U.S. at 563. Instead, the Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face." Id. at 570 (emphasis added).

  Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)). A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff

7

must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action.  Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  The Court also imposed a "plausibility standard," holding that a claim "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim.  Id. at 556.  The plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

      There are two "working principles" from Twombly and Iqbal.  Iqbal, 556 U.S. at 678.  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint.  Id. (citing Papasan, 478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79.

      Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

8

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  It is through the lens of Twombly and Iqbal that the court examines the sufficiency of Johnston's complaint to determine whether it survives screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)) and 1915A(b)(1).

**B.    Parts of Mr. Johnston's Complaint Fails to State a Claim Upon Which Relief May Be Granted**.

   **1.    Right of Access to the Courts**

Prisoners have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 821 (1977), overruled in part Lewis v. Casey, 518 U.S. 343, 354 (1996).[2]  This includes the right by prisoners to pursue direct appeals of their convictions, to seek habeas relief, and to file civil rights actions.  Id. at 821-23.  This right imposes an obligation on prison authorities to provide indigent inmates with paper and pen to draft legal documents, notary services, and stamps to mail court documents.  Id. at 824-25.  Prisoners, no less than lawyers, must also "know what the law is in order to determine whether a

---

[2] The Lewis Court overruled statements in Bounds that suggested that the right of access to the courts required states to enable prisoners to *discover* grievances and to *litigate effectively* once in court.  Lewis, 518 U.S. at 354.

9

colorable claim exists, and if so, what facts are necessary to state a cause of action." Id. at 825.  Thus, the right of access to the courts may be protected where prison officials either provide prisoners with adequate law libraries, or provide them with assistance from persons trained in the law—although other methods might also pass constitutional muster.  Id. at 828.  See also Lewis, 518 U.S. at 351.

A prisoner asserting a claim of violation of his or her right of access to the courts must establish an "actual injury" in order to prevail on a § 1983 claim premised on that right.  Lewis, 518 U.S. at 351-52; Moore v. Plaster, 266 F.3d 928, 933 (8th Cir. 2001) (citing Klinger v. Dept. of Corrections, 107 F.3d 609, 617 (8th Cir. 1997)).  "Actual injury" means "that a nonfrivolous legal claim had been frustrated or was being impeded" by defendants' failure to maintain an adequate law library or to provide adequate legal assistance.  Lewis, 518 U.S. at 352-53; Moore, 266 F.3d at 933 (quoting Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998)).

The Lewis Court emphasized the types of cases outlined in Bounds to which the right of access to the courts applies:  direct appeals of criminal convictions, habeas petitions, and civil rights actions to vindicate basic constitutional rights.  Lewis, 518 U.S. at 354.  Thus, if a prison elects to provide a law library to its inmates, it need not provide every volume of the United States Code, most volumes of which concern federal laws that have no relation to prison inmates.  Id. at 355.  Likewise, access to legal resources concerning shareholder-derivative actions and slip-and-fall claims would fall

outside the purview of the right of access to the courts.  Id.  Legal materials addressing these types of claims are simply outside the scope of materials prisoners need to "attack their sentences, directly or collaterally," or "to challenge the conditions of their confinement," matters that are at the heart of the right of access to the courts.  Id.  Denial of legal resources regarding these extraneous topics "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Id.

### 2. Some Counts in Mr. Johnston's Complaint Fail to State a Claim

Counts I and II of the complaint pass screening as to Mr. Johnston's state habeas cases.  In each of these counts, Mr. Johnston alleges the defendants failed to provide current law books in the law library at the Mike Durfee State Prison.  See Docket No. 1 at pp. 4-5.  He alleges his state habeas case was frustrated because the law library had outdated books in it, leading him to fail to adequately assert his claim and to fail to properly request a certificate of probable cause.  Id.

The court interprets Count III of the complaint to state a claim in the alternative to Counts I and II.  In Count III Mr. Johnston alleges defendants failed to provide a knowledgeable law librarian and that this resulted in frustration of Mr. Johnston's state habeas case.  As discussed above, defendants are not required to provide *both* a legal assistant and adequate legal books, but only one or the other.  To the extent Mr. Johnston is alleging Count III in the alternative to Counts I and II, it also passes screening.

Count IV does not pass screening.  It alleges defendants have failed to provide a physical space for legal research large enough to accommodate all inmates who wish to access the law library at the same time.  Mr. Johnston does

not allege he failed to succeed at any of his lawsuits because he did not get enough time in the law library in order to conduct research.  Rather, he posits that outdated and absent law books were the reason for his lack of success.  Count IV should be dismissed.

Count V similarly fails to pass screening.  It alleges that defendants have not provided sufficient numbers of computers and legal templates on those computers.  Again, Mr. Johnston does not allege that any of his lawsuits failed because he lacked access to computers or legal templates.  Rather, he alleges his lawsuits were frustrated because of outdated law books and absent law books.  Count V should be dismissed.

Count VI alleges defendants have not provided a schedule for inmates to use the law library that allows sufficient time for the inmates' needs.  Mr. Johnston does not allege he failed to succeed at any of his lawsuits because he did not get enough time in the law library in order to conduct research.  Rather, he posits that outdated and absent law books was the reason for his lack of success.  Count VI should accordingly be dismissed.

Count VII alleges defendants have violated Mr. Johnston's right of access to the courts because they have not provided access to the Internet.  As discussed above, defendants are not required to provide access to the Internet, a legal assistant and adequate legal books, but only one form of access to information about the relevant law.  The Internet would, of course, be one such possible source.  To the extent Mr. Johnston is alleging Count VII in the alternative to Counts I, II, and III it also passes screening.

Count VIII alleges defendants have violated Mr. Johnston's right of access to the courts because they have not provided legal assistance that is regularly available for sufficient periods of time.  Providing consultation with a knowledgeable legal assistant is one way defendants can provide access to the courts.  Mr. Johnston alleges his cases failed because the lawbooks in the law library were either outdated or absent.  Therefore, if a legal assistant had been available for sufficient periods of time for Mr. Johnston to consult with, he may have succeeded at his lawsuits.  Count VIII accordingly passes screening as an alternative claim to Counts I, II, III, and VII.

Count IX fails to pass screening.  It alleges defendants have unreasonably restricted inmates' access to copies of case law.  Whether that is true or not is not linked to "actual injury."  Mr. Johnston does not allege his other lawsuits failed because he did not get enough copies of case law.  Rather, he alleges his suits failed because of outdated or absent law books.  Accordingly, Count IX should be dismissed.

Count X fails to pass screening for the same reason.  Count X alleges defendants unreasonably restrict inmates' ability to make copies for legal purposes.  Again, this is not the reason Mr. Johnston alleges his other lawsuits failed, so he fails to tie the alleged deficient policy in Count X to an "actual injury." For that reason, Count X must be dismissed.

Count XI fails to pass screening for the same reason.  Count XI alleges defendants unreasonably restrict inmates' mail to 5 letters per week.  Therefore, when an inmate files a lawsuit against more than 3 defendants, he is unable to mail out the necessary letters to all the defendants with his 5 allotted letters per

week. This is not tied to the frustration or interference with any of Mr. Johnston's prior lawsuits. The habeas petitions in state court require the naming of a single defendant: the custodian of Mr. Johnston's person. Therefore, the habeas action Mr. Johnston brought would have been unaffected by the five-letters, three-defendants rule. The § 1983 lawsuits Mr. Johnston brought in this court named only two defendants, so again, that suit was unaffected by the five-letter, three defendants rule. The court recommends dismissal of Count XI because it is not tied to any actual injury.

Count XII alleges defendants deny Mr. Johnston's access to the courts by allowing inmates only one hour on a computer at a time and not allowing the inmates to save their work product electronically on the computer. This count fails for the same reason discussed above—inability to work longer on a computer or to save work product on a computer is not the reason Mr. Johnston says his lawsuits failed. Because the policy attacked in Count XII is not linked to an actual injury to Mr. Johnston, Count XII should also be dismissed.

Count XIII alleges defendants deny Mr. Johnston's access to the courts by not allowing inmates to share legal documents on law library computers and by deleting templates from software on computers. This count fails because the policy is not linked to an actual injury to Mr. Johnston. Mr. Johnston does not allege that this policy resulted in the frustration or interference with any lawsuit. Count XIII should accordingly be dismissed.

Count XIV does not allege a denial of access to the courts. Rather, it alleges that, by denying inmates access to the Internet, defendants have imposed cruel

and unusual punishment on them by violating the right to freedom of the press. Count XIV does not allege a claim.

The right to freedom of the press does not refer to the right of inmates to access to a free and open *electronic* press.  Instead, freedom of the press at its core is a constitutional protection from prior restraint upon publication.  Lovell v. City of Griffin, Ga., 303 U.S. 444, 451-52 (1938).  Defendants' policy has no effect on publication of information on the Internet or elsewhere.

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits physically barbarous punishment, the unnecessary and wanton infliction of pain, and sentences that are grossly disproportionate to the severity of the crime.  Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981).  To suggest that denying inmates access to the Internet is cruel and unusual punishment is simply frivolous.  Accordingly, Count XIV should be dismissed.

## CONCLUSION

In accordance with the above-described facts, law, and analysis, the court respectfully recommends the following:

1.  that Counts I, II, III, VII and VIII be allowed to go forward and that defendants should be served and directed to file answers as to these counts only;

2.  that Counts IV, V, VI, IX, X, XI, XII, XIII, and XIV should be dismissed as frivolous or failing to state a claim upon which relief may be granted.

## NOTICE TO PLAINTIFF

Plaintiff has fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained.  Failure to file timely

objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

    DATED this 10th day of November, 2015.

                                      BY THE COURT:

                                      VERONICA L. DUFFY
                                      United States Magistrate Judge