UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DAVID H. JOHNSTON,<br><br>                  Plaintiff,<br><br>     vs.<br><br>ROBERT DOOLEY, WARDEN, MIKE DURFEE STATE PRISON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND DENNIS KAEMINGK, SECRETARY OF CORRECTIONS FOR THE STATE OF SOUTH DAKOTA, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES;<br><br>                  Defendants. | 4:15-CV-04125-LLP<br><br><br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on plaintiff David H. Johnston's *pro se* complaint pursuant to 42 U.S.C. § 1983.  See Docket No. 1.  Mr. Johnston has been granted *in forma pauperis* status and has paid his initial partial filing fee. The pending matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, District Judge.

This court previously screened this case pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and recommended dismissal of Counts IV, V VI, IX, X, XI, XII, XIII, and XIV of Mr. Johnston's complaint.  See Docket No. 12.  Thereafter, the district court allowed Mr. Johnston to amend his complaint as to the counts

recommended for dismissal.  See Docket No. 15.  The district court now asks this court to screen those counts again, as amended, pursuant to 28 U.S.C. § 1915. This is this court's recommendation.

## FACTS

### A.    Mr. Johnston's 2014 Case

Last year in 2014, Mr. Johnston filed a § 1983 civil suit nearly identical to the present lawsuit.  See Johnston v. Dooley, 4:14-cv-04125, Docket No. 1 (D.S.D.).  In that earlier lawsuit, Mr. Johnston alleged his First Amendment right of access to the courts was being violated by defendant Robert Dooley, Warden at the Mike Durfee State Prison, and Dennis Kaemingk, Secretary of the South Dakota Department of Corrections.  Id.  He alleged defendants violated his right of access to the courts through the following acts or omissions:

1.    Providing a law library in a room the confines of which are so small that only five prisoners at a time can be accommodated;

2.    Providing South Dakota Codified Laws and American Jurisprudence in an incomplete and unupdated form; providing only a partial set of the United States Code that is current only up to 2005;

3.    Providing consultation with the Contract Attorney too infrequently and limiting the number of case laws obtainable to eight per month;

4.    Charging $0.25 per legal copy;

5.    Providing only two computers for prisoners to use when most courts are transitioning or have already transitioned to a paperless docket;

6.     Limiting the number of legal letters allowed per week to five and limiting postage to $10 per month; and

7.     Denying prisoners adequate and current forms.

See Docket Nos. 1, 9 & 14 in CIV. 14-4125.[1]  For these alleged constitutional deprivations, Mr. Johnston sought an order requiring the state to stock the law library at Mike Durfee with the United States Code, and "USAC", current Jurisprudence, a full set of the South Dakota Codified Laws, a room big enough for 20 inmates to research in, a copier in the law library for inmate use, more computers for creating legal documents, a paralegal to operate the law library and answer legal questions, better quality forms or a means for inmates to obtain their own forms, a personal computer and printer for Mr. Johnston's personal use with precise specifications (e.g. 1 terabyte hard drive, 8G RAM, sound card with ear bud jack, network wi/fi compatible card, etc.), and the payment of $1 million in damages.  Id.  Mr. Johnston's 2014 case was dismissed without prejudice on this court's recommendation because he had failed to exhaust his administrative remedies before filing suit.  Id. at Docket Nos. 47 and 55.

**B.     Mr. Johnston's Amended Claims in His 2015 Case**

Six weeks after his 2014 case was dismissed, Mr. Johnston filed the instant action.  See Docket No. 1.  In this action, Mr. Johnston alleged 14

_____

[1] In the 2014 case, Mr. Johnston filed his initial complaint in narrative form on August 11, 2014.  See Docket No. 1 supplemented by Docket No. 9.  Because certain information needed to screen Mr. Johnston's complaint was missing, the court ordered him to fill out the standard § 1983 form complaint.  See Docket No. 13 in that case.  Thereafter, Mr. Johnston submitted a filled out form complaint.  See Docket No. 14.

separate claims, all of which alleged—again--that defendants Robert Dooley and Dennis Kaemingk have violated his First Amendment right of access to the courts. Id. Five of those claims survived screening (Counts I, II, III, VII, and VIII).

This court notes that Mr. Johnston has actually had two opportunities prior to this to amend his complaint to state a claim. Upon reviewing Mr. Johnston's original complaint in this 2015 lawsuit, this court was particularly concerned with whether he was able to demonstrate the "actual injury" portion of his access to the courts claim. Accordingly, the court specifically told Mr. Johnston that it was concerned about the "actual injury" element of his claims, the court explained in detail what the applicable law was, and then gave Mr. Johnston a chance to shore up his statement of his claims by providing additional facts concerning "actual injury." See Docket No. 8. Mr. Johnston accepted this court's invitation and provided supplemental facts. See Docket No. 9.

Then, when this court issued its report and recommendation recommending that nine of Mr. Johnston's claims still failed to state a claim, the district court granted Mr. Johnston yet a second chance to amend his complaint as to these nine claims. See Docket No. 14. Thus, the amended claims set forth at Docket No. 15 are Mr. Johnston's third iteration of these claims.

After amending the nine (9) claims previously recommended for dismissal, those nine amended claims are as follows:

**Count IV:**   Defendants violated Mr. Johnston's right of access to the courts as guaranteed by the First and Fourteenth Amendments by providing a law library that is too small and can only contain five (5) inmates at a time.  The injury Mr. Johnston alleges is that he "was rushing to make use of the limited space and time.  Thus creating errors that prolonged, extended litigation and filing also created errors that may have been avoided which caused the dismissal of a 1983 action (14-4125), denial of a [sic] appeal of conviction (CR 10-336) also the rejection by this court to allow a [sic] extension of time to properly answer a [sic] order of clarification which the defendant gave a rough idea of what the court asked but was not able to properly research and answer (15-04125)."

**Count V**:   Defendants violated Mr. Johnston's right of access to the courts as guaranteed by the First and Fourteenth Amendments by not providing inmates with an adequate number of computers.  The injury Mr. Johnston alleges is that he "was rushing to make use of the limited computers and time allowed on these computers thus creating errors and delays causing Plaintiff to print copy that did not properly convey his thoughts and grounds thus causing a [sic] appeal to be denied (CR 10-336) and lead to excess action to amendments in a 1983 action (14-04125) and the denial of a [sic] extension for a § 1983 action (order of clarification 15-04125)."

**Count VI:**   Defendants violated Mr. Johnston's right of access to the courts as guaranteed by the First and Fourteenth Amendments by not providing a schedule to allow adequate time for inmates to participate in the law library. Mr. Johnston alleges the lack of a schedule for law library participation caused him to have to ask for extensions in a § 1983 action (15-04125) the denial of

5

appeal (Brown County CR 10-336), the denial of a motion to vacate sentence/conviction (Brown County CR 10-336) and denial of Plaintiffs former § 1983 Action (14-04125)."

**Count IX:**   Defendants violated Mr. Johnston's right of access to the courts as guaranteed by the First and Fourteenth Amendments by limiting inmates to receiving only eight (8) copies of legal cases per month, which is not sufficient to properly and meaningfully present and litigate a lawsuit according to Mr. Johnston.  Mr. Johnston alleges that, due to defendants' policy as to copies of case law, his § 1983 lawsuit (14-04125) was dismissed.

**Count X**:   Defendants violated Mr. Johnston's right of access to the courts as guaranteed by the First and Fourteenth Amendments by charging money to inmates to make legal copies.  Mr. Johnston does not identify a lawsuit, claim, or cause of action that was frustrated or impeded by defendants' actions.  Instead, he asserts:  "Plaintiff was injured by being charged for 40 copies to this court @ .25 per copy for a total of $10.00."

**Count XII:**[2] Defendants violated Mr. Johnston's right of access to the courts as guaranteed by the First and Fourteenth Amendments by disallowing inmates to electronically store their [legal] work product.  As a result of this policy, Mr. Johnston asserts delays occurred, "recommendation of dismissal of 1983 action (15-04125) denial of a request for extension for this courts [sic] order of clarification (15-04125) and the need to file excessive amendments in a [sic]

---

[2] This court previously recommended dismissal of Count XI of Mr. Johnston's complaint.  Mr. Johnston did not amend Count XI.  Therefore, Count XI should be dismissed because Mr. Johnston's objections to the dismissal of that count were overruled and he has not offered any amendment.  See Docket Nos. 14 and 15.

attempt to clarify my thoughts and counts for this court for a prior 1983 action (14-04125) thus causing delays and therefore extending Plaintiffs incarceration."

**Count XIII:** Defendants violated Mr. Johnston's right of access to the courts as guaranteed by the First and Fourteenth Amendments by disallowing the storage of legal templates on computers available to inmates and allowing the law librarian to delete inmates' legal work.  Because of this policy, Mr. Johnston alleges that "the Plaintiff was compelled to attempt to recall wording of partial work already completed and half done, which caused delays and resubmissions to this court for previous 1983 action (14-04125) leading to the dismissal of referenced 1983."

**Count XIV:** Defendants violated Mr. Johnston's right of access to the media as guaranteed by the First, Eighth and Fourteenth Amendments by denying inmates access to the internet, a "necessity of life" according to Mr. Johnston.  The injury Mr. Johnston alleges occurred because of this denial is "[m]entally causing institutionalization due to loss of connection with the world through current events, inability to stay current with changes to internet/computer systems, loss of family connections that in this day and age is through the internet connectivity therefore compounding the suffering due to the inability to contact family in times of loss of family members and friends also causing monetary loss due to late payments for increased bills."

Besides the instant action, Mr. Johnston has filed three (3) prior lawsuits in federal court.  Those are:  (1) Johnston v. Dooley, 4:14-cv-04125-LLP, his prior § 1983 lawsuit in federal court referenced above; (2) Johnston v. Dooley, 4:14-cv-04182-LLP, a § 1983 lawsuit seeking monetary damages on the alleged basis that defendants had illegally extended Mr. Johnston's sentence; and (3) Johnston v.

Dooley, 4:15-cv-04126-LLP, a § 1983 lawsuit nearly identical to number two just discussed.  Lawsuits number two and three were dismissed on recommendation of this court pursuant to Heck v. Humphry, 512 U.S. 477 (1994).  As discussed previously, lawsuit number one was dismissed for failure to exhaust prison administrative remedies before filing suit.

Mr. Johnston's litigation in South Dakota state courts is less clear.  It is known that he was convicted of sexual contact with a child in 1998.  He was released on parole on February 5, 2003.  He was then charged with a new crime of sexual contact with a child in December 2009.  His parole was revoked in April 2010.  He appealed this revocation of parole and it was affirmed (case number CR-10-336).  He was sentenced on the new crime August 19, 2013.  See Johnston v. Dooley, 4:15-cv-04126-LLP, Docket No. 7 at pp. 10-12 (setting forth history).

Mr. Johnston filed a petition for a writ of habeas corpus in state circuit court for Brown County, South Dakota in 2014 (case number 14-241), which was dismissed August 11, 2014.  See Docket No. 1 at p. 4 (Mr. Johnston's complaint in this matter).  He apparently also currently has a habeas petition pending in state court that is not yet resolved.  See Johnston v. Dooley, 4:15-cv-04126-LLP, Docket No. 10 (seeking to hold federal case in abeyance until state court decides habeas petition).  The court now turns to a review of the legal merits of Mr. Johnston's claims.

## DISCUSSION

## A.    Rule 12(b)(6) and 28 U.S.C. § 1915 Screening Standards.

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)  and 1915A(b)(1), a prisoner's complaint should be dismissed on screening if it "fails to state a claim upon

which relief may be granted."  This standard is the same standard as is used to determine whether a complaint satisfies the standards of FED. R. CIV. P. 12(b)(6).  Kane v. Lancaster County Dept. of Corrections, 960 F. Supp. 219 (D. Neb. 1997).  "In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.' " Jackson v. Nixon, 747 F.3d 537, 541 (8th Cir. 2014) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).  "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper framework."  Id. at 544 (quoting Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004)).

The United States Supreme Court addressed the standard that district courts are to apply to Rule 12(b)(6) motions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

The law predating Twombly and Iqbal held that under Rule 12(b)(6), the court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added).  However, Conley's "no set of facts" language was overruled in Twombly.  Twombly, 550 U.S. at 563.  Instead, the Court adopted

9

a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face."  Id. at 570 (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)).  A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action.  Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  The Court also imposed a "plausibility standard," holding that a claim "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim.  Id. at 556.  The plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

There are two "working principles" from Twombly and Iqbal.  Iqbal, 556 U.S. at 678.  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint.  Id. (citing Papasan, 478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has alleged–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  It is through the lens of Twombly and Iqbal that the court examines the sufficiency of Johnston's complaint to determine whether it survives screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## B.   Seven of Mr. Johnston's Amended Claims Fail to State a Claim Upon Which Relief May Be Granted.

### 1.    Right of Access to the Courts

Prisoners have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 821 (1977), overruled in part Lewis v. Casey, 518 U.S.

11

343, 354 (1996).[3]  This includes the right by prisoners to pursue direct appeals of their convictions, to seek habeas relief, and to file civil rights actions.  Id. at 821-23.  This right imposes an obligation on prison authorities to provide indigent inmates with paper and pen to draft legal documents, notary services, and stamps to mail court documents.  Id. at 824-25.  Prisoners, no less than lawyers, must also "know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action."  Id. at 825.  Thus, the right of access to the courts may be protected where prison officials either provide prisoners with adequate law libraries, or provide them with assistance from persons trained in the law—although other methods might also pass constitutional muster.  Id. at 828.  See also Lewis, 518 U.S. at 351.

A prisoner asserting a claim of violation of his or her right of access to the courts must establish an "actual injury" in order to prevail on a § 1983 claim premised on that right.  Lewis, 518 U.S. at 351-52; Moore v. Plaster, 266 F.3d 928, 933 (8th Cir. 2001) (citing Klinger v. Dept. of Corrections, 107 F.3d 609, 617 (8th Cir. 1997)).  "Actual injury" means "that a nonfrivolous legal claim had been frustrated or was being impeded" by defendants' failure to maintain an adequate law library or to provide adequate legal assistance.  Lewis, 518 U.S. at 352-53; Moore, 266 F.3d at 933 (quoting Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998)).

---

[3] The Lewis Court overruled statements in Bounds that suggested that the right of access to the courts required states to enable prisoners to *discover* grievances and to *litigate effectively* once in court.  Lewis, 518 U.S. at 354.

The <u>Lewis</u> Court emphasized the types of cases outlined in <u>Bounds</u> to which the right of access to the courts applies:  direct appeals of criminal convictions, habeas petitions, and civil rights actions to vindicate basic constitutional rights.  <u>Lewis</u>, 518 U.S. at 354.  Thus, if a prison elects to provide a law library to its inmates, it need not provide every volume of the United States Code, most volumes of which concern federal laws that have no relation to prison inmates.  <u>Id.</u> at 355.  Likewise, access to legal resources concerning shareholder-derivative actions and slip-and-fall claims would fall outside the purview of the right of access to the courts.  <u>Id.</u>  Legal materials addressing these types of claims are simply outside the scope of materials prisoners need to "attack their sentences, directly or collaterally," or "to challenge the conditions of their confinement," matters that are at the heart of the right of access to the courts.  <u>Id.</u>  Denial of legal resources regarding these extraneous topics "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  <u>Id.</u>

### 2.    Seven Amended Claims Fail to State a Claim

#### a.    Count IV

Mr. Johnston suggests three "actual injuries" as a result of defendants maintaining a law library that is capable of holding only five inmates at a time.  In this very case, he alleges "rejection by this court to allow a [sic] extension of time to properly answer a [sic] order of clarification which the defendant [plaintiff] gave a rough idea what of the court asked but was not able to properly research and answer."  <u>See</u> Docket No. 15 at p. 2.  Mr. Johnston's claims in this case were not

impeded or frustrated.  To the extent Mr. Johnston was not able to state his claims cogently at first when he filed his initial complaint, this court allowed him to, in essence, amend his complaint after notifying him of the weak part of his claims. See Docket No. 8.  He did so amend.  See Docket No. 9.

Mr. Johnston at the same time requested an additional 30 days to do legal research, but what the court needed clarification of was the facts, not the law.  The court wanted Mr. Johnston to identify which legal claims he had that were frustrated or impeded by defendants maintaining a too-small law library room. There was no frustration or impeding of this lawsuit based on that denial. Furthermore, the outcome of this lawsuit is still undetermined.  Mr. Johnston may yet prevail, in which case no frustration or impedance will have happened.  This lawsuit cannot be the "actual injury."

Next, Mr. Johnston suggests that he suffered actual injury in his substantially identical 2014 case filed under § 1983 in this court—4:14-cv-04125-LLP—because lack of space in the law library "caused errors that prolonged, extended litigation and created errors that may have been avoided."  This lawsuit was dismissed because Mr. Johnston failed to exhaust prison administrative remedies before filing suit.  Mr. Johnston admitted in that lawsuit that he was aware of the existence of the prison's administrative remedies.  He stated the reason he did not exhaust those remedies before filing suit was not because he did not conduct adequate legal research, but because the law librarian told him he did not have to exhaust first.  Given Mr. Johnston's stance in that prior lawsuit, no amount of legal research would have changed his actions as he said he was acting

on the advice of the librarian.  The 2014 lawsuit also does not provide "actual injury."

Finally, Mr. Johnston alleges he lost his 2010 appeal of the revocation of his parole because he could not get enough time in the law library due to inadequate space.  Even if this is true, the statute of limitations on pursuing a § 1983 action based on that event has passed.  The statute of limitations for a § 1983 action is three years.  See Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 275 (1985); SDCL §§ 15-2-14 and 15-2-15.2.  If Mr. Johnston lost a 2010 appeal due to defendants' actions, he would have had to file his § 1983 claim with this court no later than the end of 2013.[4]  Thus, this lawsuit, filed in 2015, is necessarily outside the statute of limitations.

The court concludes that, after being afforded two opportunities to amend, Mr. Johnston has still not stated an actual injury for amended Count IV.  Accordingly, this court recommends dismissing that count for failure to state a claim.

### b.    Count V

Mr. Johnston alleges that, due to insufficient numbers of computers, he suffered actual injury in the same three cases discussed above.  In his state court criminal appeal, CR 10-336, he alleges his appeal was denied due to lack of sufficient numbers of computers.  This fails to state an actual injury because it is outside the statute of limitations as explained above.  In any event,

---

[4] This court does not have the state court file for case number CR 10-336, so the exact date the appeal was denied is unknown.

Mr. Johnston could have hand-written his appeal without the use of a computer.

Mr. Johnston alleges his 2014 § 1983 (4:14-cv-04125-LLP) lawsuit which was dismissed for failure to exhaust his administrative remedies also is an "actual injury." As discussed above, Mr. Johnston failed to exhaust prison administrative remedies because, according to him, the law librarian allegedly told him he did not have to exhaust. This cannot be an actual injury for Count V either because it is not tied to insufficient numbers of computers.

Finally, Mr. Johnston alleges a motion for an extension was denied in this case due to lack of computers and this constitutes an "actual injury." As explained above, this court denied the request for extension because Mr. Johnston stated he needed more time to do legal research and the court did not want legal research—the court asked for facts. Mr. Johnston was not prejudiced by the denial of his request for an extension in this case. In any event, the district court granted Mr. Johnston a second "bite at the apple" by allowing him to amend his claims again after the initial screening had been accomplished so any injury from the denial of the requested extension was obviated. This case does not supply the needed "actual injury" either.

The court concludes that, after being afforded two opportunities to amend, Mr. Johnston has still not stated an actual injury for amended Count V. Accordingly, this court recommends dismissing that count for failure to state a claim.

16

### c.   Count VI

Mr. Johnston alleges the same three cases and results in those cases as actual injury for amended Count VI as he did for amended Count V, above.  As discussed above, those cases do not supply actual injury.

In addition, Mr. Johnston states that he filed a motion to vacate his sentence and conviction in Brown County in 2010.  He states this motion was denied, but he does not state why.  This averment is insufficient to spell out an "actual injury."  In addition, the denial, if it occurred in 2010, is outside the statute of limitations.

The court concludes that, after being afforded two opportunities to amend, Mr. Johnston has still not stated an actual injury for amended Count VI.  Accordingly, this court recommends dismissing that count for failure to state a claim.

### d.   Count IX

Mr. Johnston alleges the dismissal of his 2014 lawsuit in this court for failure to exhaust was caused by defendants' policy of allowing only eight copies of case law per month.  In other counts, Mr. Johnston alleges that defendants failed to have legal resources available to him regarding requirements of the Prison Litigation Reform Act (PLRA), either by providing legal reference materials on that law, or by providing access to the internet to research the law, or by providing knowledgeable legal assistance on that topic.  The requirement that prisoners exhaust administrative remedies within the prison system before filing lawsuits in federal court is contained within the

17

PLRA at 42 U.S.C. § 1997(e) ("no action shall be brought. . . under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted."). Taken together with Mr. Johnston's other allegations about the inadequacy of the legal resources, printed and human, available to him on the subject of the PLRA, Count IX states a claim. The requirements of the PLRA formed the basis for dismissal of Mr. Johnston's 2014 § 1983 lawsuit (4:14-cv-04125-LLP). He has alleged that access to printed legal resources were lacking and that knowledgeable human legal assistants were lacking. If case law were equally lacking, that would indeed suffice to show an "actual injury."

As stated in this court's first R & R on screening, prison officials are not limited in how they provide inmates with access to the law. There are many options by which prisons can satisfy this constitutional requirement. Here, Mr. Johnston has alleged various deficiencies in the alternative. Like Counts I, II, III, VII, and VIII, then, the court holds that amended Count IX survives screening.

### e.   Count X

As to actual injury in Count X (challenging the policy of charging inmates for legal copies), Mr. Johnston fails to identify a claim or lawsuit that was frustrated or impeded by defendants' actions. Instead, in Count X, Mr. Johnston states he was injured because he had to pay money for copies. This does not constitute an "actual injury" for purposes of proving a *prima facie* claim of denial of access to the courts.

Lewis requires Mr. Johnston to allege that a "nonfrivolous legal claim had been frustrated or was being impeded" by defendants' practice of charging inmates for legal copies.  Lewis, 518 U.S. at 352-53.  Mr. Johnston alleges no such claim.

In Myers v. Hundley, 101 F.3d 542, 543 (8th Cir. 1996), inmates alleged their right of access to the courts was violated by the prison's policy that inmates pay for postage on their legal papers which are sent through the United States mails.  The court rejected this claim, noting that the inmates must assert they suffered an actual injury to a pending or contemplated legal claim.  Id. at 544.  Simply stating that one suffered a monetary loss was not enough.  Id.  Instead, inmates would have to allege, for example, that they were prevented from buying stamps to file their complaints or that lack of postage kept them from meeting a court deadline which resulted in their complaints being dismissed.  Id.  Here, Mr. Johnston has alleged nothing more than a financial injury.  This is not sufficient to show "actual injury" for an access to the courts claim.  Id.  The court therefore recommends dismissal of amended Count X.

### f.    Count XI

When this court conducted its initial screening, it recommended dismissal of Count XI for failure to state a claim.  The district court gave Mr. Johnston a chance to amend this claim.  See Docket No. 14.  When Mr. Johnston filed his amended claims, he did not reassert Count XI.  Therefore, this court recommends that Count XI be dismissed for failure to

state a claim.  The original statement of the claim did not suffice and no
amendment has been offered.

### g.    Count XII

Mr. Johnston alleges he has suffered actual injury in this case (4:15-cv-
04125-LLP) due to defendants' policy of not allowing inmates to store
documents electronically.  For all the reasons already discussed, this case does
not constitute actual injury.

Mr. Johnston alleges he suffered actual injury in his 2014 § 1983 case
(4:14-cv-04125-LLP) which was dismissed for failure to exhaust prison
remedies.  He states that the policy required him "to file excessive amendments
in a [sic] attempt to clarify my thoughts and counts for this court . . . thus
causing delays and therefore extending Plaintiffs [sic] incarceration."  This
allegation does not plausibly state an actual injury.  First, excessive
amendments did not prejudice Mr. Johnston in his prior § 1983 action.  The
action was dismissed because he failed to avail himself of prison administrative
remedies prior to filing suit in federal court.  Similarly, any delays that
happened in the case did not frustrate or impede his claim.  The case was not
dismissed due to delays or multiple amendments.  Finally, the length of
Mr. Johnston's incarceration cannot and will not be affected by his prior
§ 1983 action or this present action.  Under Heck, no civil suit for damages can
act to undermine or invalidate a criminal conviction.  Heck, 512 U.S. 486-87.
This has been explained to Mr. Johnston in his two prior cases which were

dismissed on the basis of <u>Heck</u>.  <u>See</u> <u>Johnston v. Dooley</u>, 4:14-cv-04182-LLP,
Docket No. 9; and <u>Johnston v. Dooley</u>, 4:15-cv-04126, Docket No. 7.

No actual injury has been pleaded in support of amended Count XII.
Therefore, this court recommends that count be dismissed for failure to state a
claim.

### h.   Count XIII

Mr. Johnston alleges that defendants' policy of deleting inmates' legal
work from computers and deleting legal templates from computers caused
actual injury to his 2014 § 1983 case (4:14-cv-04125-LLP) by causing delays,
resubmissions, and ultimately leading to the dismissal of that prior case.  This
was the prior case that was dismissed for failure to exhaust prison
administrative remedies before filing in federal court.  As discussed above, the
case was not prejudiced by any delays and resubmissions, if indeed there were
any.  The case was not dismissed for these reasons.  Mr. Johnston has failed to
state a plausible actual injury for amended Count XIII.  This court, therefore,
respectfully recommends that amended Count XIII be dismissed for failure to
state a claim.

### i.   Count XIV

Count XIV (challenging the policy prohibiting inmates' access to the
internet) similarly fails.  The harm identified by Mr. Johnston in this count is
"[m]entally causing institutionalization due to loss of connection with the world
through current events, inability to stay current with changes to
internet/computer systems, loss of family connections that in this day and age

is through the internet connectivity therefore compounding the suffering due to the inability to contact family in times of loss of family members and friends also causing monetary loss due to late payments for increased bills." This fails to identify a nonfrivolous legal claim that was impeded or frustrated by denial of access to the internet. Therefore, Mr. Johnston has failed to allege an access to the courts claim.

In Count XIV, Mr. Johnston also invokes the Eighth Amendment as a basis for his claim. The court assumes Mr. Johnston is relying on the right to be free from cruel and unusual punishment. Punishment is "cruel" under the Eighth Amendment when it "involve[s] torture or a lingering death," "something inhuman and barbarous." Baze v. Rees, 553 U.S. 35, 49 (2008). Also, punishment is "cruel" when it involves deliberate indifference to serious medical needs of prisoners. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Although the Eighth Amendment "proscribes more than [just] physically barbarous punishments" and also encompasses "concepts of dignity, civilized standards, humanity, and decency," Estelle, 429 U.S. at 102, it has not been extended so far as to encompass access to the internet. Cf. United States v. Demers, 634 F.3d 982, 984-84 (8th Cir. 2011) (upholding a ban on internet access as a condition of supervised release). As to amended Count XIV, Mr. Johnston has also failed to state a claim. The court recommends this count be dismissed as well.

**C.    Repeated Amendments**

Leave to amend a complaint "shall be freely given when justice so requires." See FED. R. CIV. P. 15.  However, "parties do not have an absolute right to amend their pleadings, even under this liberal standard." Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012) (quoting Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008)).  The Supreme Court has recognized that such amendments may be denied if repeated failures to cure deficiencies by previously-allowed amendments has occurred.  Foman v. Davis, 371 U.S. 178, 182 (1962).  See also Hartis, 694 F.3d at 948 (stating "[a] district court appropriately denies the movant leave to amend if 'there are compelling reasons such as . . . repeated failure to cure deficiencies by amendments previously allowed.' ").

Here, Mr. Johnston has been given three opportunities to state his claims (his original complaint, his response to this court's request for clarification, and his formal amendment granted by the district court).  This has involved two orders, one by this court and one by the district court, granting permission to amend his claims.  In addition, before both of the opportunities to restate his claims, Mr. Johnston had the benefit of this court explaining to him what the law applicable to his claims is.  Mr. Johnston's amendments were unsuccessful in curing the deficiencies of all but one of the claims (Count IX).  Under Foman and Hartis, additional attempts to amend the complaint by Mr. Johnston should be denied.  Mr. Johnston's complaint was filed July 16, 2015, and still has not been served on defendants because of the

requirement of the additional screening of the amendments.  This case should be allowed to proceed on the claims that are colorable and no further amendments should be allowed.

## CONCLUSION

In accordance with the above-described facts, law, and analysis, the court respectfully recommends the following:

1.      that amended Count IX be allowed to go forward and that defendants should be served and directed to file an answer to this and the other counts that have survived screening (I, II, III, VII and VIII);

2.      that amended Counts IV, V, VI, X, XII, XIII, and XIV should be dismissed as frivolous or failing to state a claim upon which relief may be granted; and

3.      that Count XI should be dismissed as frivolous or failing to state a claim upon which relief may be granted according to this court's original screening opinion and the fact that Mr. Johnston never offered an amended version of Count XI after being given permission to do so.[5]

## NOTICE TO PLAINTIFF

Plaintiff has fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained.  Failure to file timely

---

[5] Mr. Johnston and Michael Readd have filed nearly identical pleadings in their two cases on nearly identical dates.  Compare Readd v. Dooley, 4:15-cv-04127-LLP with Johnston v. Dooley, 4:15-cv-04125-LLP.  In Mr. Readd's case, he included an affirmative statement stipulating to the dismissal of his Count XI. See Readd, supra, at Docket No. 17 at p. 1.

objections will result in the waiver of the right to appeal questions of fact.

Objections must be timely and specific in order to require de novo review by the

District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>,

781 F.2d 665 (8th Cir. 1986).

DATED December 21, 2015.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge